SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Nicky Travieso v. Ciara Crespo (A-10-25) (091127)**

**Argued March 31, 2026 -- Decided August 6, 2026**

**JUSTICE PATTERSON, writing for a unanimous Court.**

In this appeal, the Court considers the application of N.J.S.A. 17:28-1.1(f) to uninsured motorist (UM) coverage -- mandatory first-party coverage insuring against the possibility of injury or property damage caused by a driver without liability insurance coverage. Specifically, the Court considers whether plaintiff Nicky Travieso's recovery under his employer's automobile liability policy for an accident caused by an uninsured motorist while Travieso was driving his employer's vehicle extends to the policy's $1,000,000 third-party liability limit or is instead limited to $15,000 -- the UM coverage limit that his employer selected under the policy.

The vehicle Travieso was driving at the time of the accident was insured under a policy issued by defendant Zurich American Insurance Company (Zurich). The policy provided automobile liability coverage up to a limit of $1,000,000 and general liability coverage also up to a limit of $1,000,000. The policy offered options for UM and UIM (underinsured motorist) coverage limits ranging from the then-applicable statutory mandatory minimum of $15,000 upwards. Travieso's employer purchased UM coverage subject to the $15,000 mandatory minimum.

In response to Travieso's demand for UM coverage, Zurich offered him $15,000, the maximum UM coverage available under the policy. Travieso declined that offer and brought suit, contending that N.J.S.A. 17:28-1.1(f) mandated that Zurich provide UM coverage equal to the policy's third-party liability limit of $1,000,000. The trial court ruled that "the maximum coverage available" for Travieso's UM claim "should be a million dollars," and ordered that the policy be reformed "to state that fact." The court stated that "the business has a policy of a million dollars" in UM coverage for itself, but only $15,000 in UM coverage for its employees, which was "an attempt to circumvent the statute."

The Appellate Division denied Zurich's motion for leave to appeal. The Court granted leave to appeal, limited to arguments regarding the interpretation of N.J.S.A. 17:28-1.1(f). 262 N.J. 61 (2025).

1

**HELD:** Because the Legislature addressed UM coverage and UIM coverage in precisely the same way when it enacted N.J.S.A. 17:28-1.1(f), the Court's interpretation of the statute in the UIM coverage setting of Chiaccheri v. Zurich American Insurance Co., ___ N.J. ___ (2026), decided today, also governs the UM coverage question raised in this appeal. Thus, the employer's automobile liability policy at issue in this appeal entitles Travieso to UM coverage up to $15,000 -- the UM coverage limit that his employer selected under the policy -- not up to the policy's $1,000,000 third-party liability limit.

1. The Zurich policy makes clear that the UM coverage provided to Travieso's employer as the named insured and the UM coverage provided to employees such as Travieso were subject to the same $15,000 limit for an injury to or the death of one person, consistent with the limits then in effect under N.J.S.A. 17:28-1.1(a). Contrary to the trial court's view, the Zurich policy did not provide greater UM coverage to any named insured than it provided to Travieso. (pp. 12-13)

2. The Court reviews the language of N.J.S.A. 17:28-1.1(f) and its holding today in Chiaccheri that N.J.S.A. 17:28-1.1(f) was intended to bar step-down provisions that purport to provide employees with less UIM coverage than the coverage afforded to the named insured -- not to require such policies to provide first-party UIM coverage subject to limits equal to the policies' third-party general liability limits. Id. at ___ (slip op. at 20-25). Chiaccheri found no indication in the plain language or legislative history of N.J.S.A. 17:28-1.1(f) that the statute's intended purpose was to mandate that UIM coverage equal the general liability limits of a given policy. The Legislature could easily have prescribed such a requirement but did not. (pp. 13-17)

3. N.J.S.A. 17:28-1.1(f) treats UM coverage and UIM coverage in precisely the same manner. Accordingly, the maximum UM coverage "available under the policy" that must be provided to Travieso is coverage up to the UM coverage limit his employer selected under its policy for the named insured, not up to the general third-party liability limit. Here, the applicable UM coverage limit is $15,000. The UM coverage available to Travieso under the Zurich policy met all applicable requirements of N.J.S.A. 17:28-1.1(a) and (b) and provided the same level of UM coverage to Travieso as it provided to the named insureds. Accordingly, the UM provisions of the Zurich policy do not violate either N.J.S.A. 17:28-1.1(f) or New Jersey's public policy. The Court reverses the trial court's determination and provides instructions for the proceedings on remand. (pp. 18-19)

**REVERSED and REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PATTERSON's opinion.**

2

Nicky Travieso and Evette
Travieso,

Plaintiffs-Respondents,

v.

Ciara Crespo, Nilda Rivera,
John Doe(s), Jane Doe(s),
ABC Corporation(s),
and Foulke Management,

Defendants,

and

Zurich American Insurance
Company,

Defendant-Appellant.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| March 31, 2026 | August 6, 2026 |

Louis A. Bové argued the cause for appellant (Bodell
Bové, attorneys; Louis A. Bové and Robert D. Fischer,
on the briefs).

Matthew G. Bonanno argued the cause for respondents (Rebenack, Aronow & Mascolo, attorneys; Matthew G. Bonanno, of counsel and on the briefs).

Ryan M. Savercool argued the cause for amicus curiae New Jersey Defense Association (McCarter & English, attorneys; Christopher A. Rojao, of counsel, and Ryan M. Savercool and Sofia S. Camara, on the brief).

Dominic R. DePamphilis argued the cause for amicus curiae New Jersey Association for Justice (D'Arcy Johnson Day, attorneys; Dominic R. DePamphilis and Richard J. Albuquerque, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal arising from an insurance coverage dispute between the employee of a named insured and his employer's insurer, we construe N.J.S.A. 17:28-1.1(f). That provision addresses the limits of uninsured motorist (UM) and underinsured motorist (UIM) coverage available to the named insured's employee under an automobile liability insurance policy issued to a corporate or business entity. N.J.S.A. 17:28-1.1(f) prohibits an automobile liability policy within the statute's description from providing "less uninsured or underinsured motorist coverage [to] an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy." The statute deems "[a] policy that names a corporate or business entity as a named insured" to "provide the maximum [UM] or [UIM] coverage

2

available under the policy to an individual employed by the corporate or business entity." N.J.S.A. 17:28-1.1(f).

This appeal concerns the application of N.J.S.A. 17:28-1.1(f) to UM coverage, which is "mandatory first-party coverage insuring the policy holder, and others, against the possibility of injury or property damage caused by the negligent operation of a motor vehicle by an individual without liability insurance coverage." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 561 (2015) (citing N.J.S.A. 17:28-1.4).

Defendant Zurich American Insurance Company (Zurich) challenges the trial court's summary judgment determinations in favor of plaintiffs Nicky Travieso (Travieso) and Evette Travieso. Travieso was injured in an accident caused by an uninsured motorist while driving his employer's vehicle. Plaintiffs contend that under the motor vehicle liability policy that Zurich issued to his employer, Travieso is entitled to $1,000,000 in UM coverage for his injuries. Zurich counters that Travieso is entitled to no more than $15,000 in UM coverage under the policy terms.

The parties cross-moved for partial summary judgment. Based in part on a misunderstanding of the Zurich policy's UM coverage terms, the trial court ruled that the policy violated N.J.S.A. 17:28-1.1(f) and reformed it to provide

3

$1,000,000 in UM coverage. The Appellate Division denied leave to appeal. We granted Zurich's motion for leave to appeal. 262 N.J. 61 (2025).

In Chiaccheri v. Zurich American Insurance Co., which concerned UIM coverage rather than UM coverage, we responded to certified questions regarding N.J.S.A. 17:28-1.1(f) posed by the United States Court of Appeals for the Third Circuit in a matter pending in that court. ___ N.J. ___, ___ (2026) (slip op. at 19-29). We held that a motor vehicle liability policy governed by N.J.S.A. 17:28-1.1(f) may not provide employees less UIM coverage than it provides a named insured. Ibid. We concluded, however, that the statute does not require that employees receive UIM coverage up to the policy's general third-party coverage limit. Ibid.

Because the Legislature addressed UM coverage and UIM coverage in precisely the same way when it enacted N.J.S.A. 17:28-1.1(f), our interpretation of the statute in the UIM coverage setting of Chiaccheri also governs the UM coverage question raised in this appeal. We hold that the employer's automobile liability policy at issue in this appeal entitles Travieso to UM coverage up to $15,000 -- the UM coverage limit that his employer selected under the policy -- not UM coverage up to the policy's $1,000,000 third-party liability limit.

4

We therefore reverse the trial court's judgment and remand this matter to the trial court for further proceedings.

## I.

## A.

We summarize the facts based on the allegations of the complaint and the record presented to the trial court in summary judgment proceedings.

On June 11, 2022, Travieso, an employee of Foulke Management Corporation (Foulke), was injured in an accident while driving a vehicle owned by Foulke. The other vehicle involved in the accident was owned by defendant Nilda Rivera and driven by defendant Ciara Crespo.

Plaintiffs allege that the accident occurred because of the negligence of Rivera and Crespo and that Rivera's automobile insurance policy "did not provide liability coverage nor bodily injury coverage." They contend that Rivera and Crespo, for purposes of the accident, "are uninsured, thereby triggering UM benefits."

On the date of Travieso's accident, the Foulke vehicle he was driving was insured under an automobile liability policy issued by Zurich. The policy provided automobile liability coverage up to a limit of $1,000,000 and general liability coverage also up to a limit of $1,000,000.

5

In a provision entitled "Selection of Optional Uninsured and Underinsured Motorist Coverage Limits for Standard Policy New Jersey," the Zurich policy noted that a standard automobile insurance policy was required to include UM and UIM coverage "in limits for bodily injury or death equal to $15,000 on account of injury to, or death of, one person, in any one accident." (citing N.J.S.A. 17:28-1.1). However, Zurich offered insureds a range of options with higher UM coverage limits than the statutory minimum limits. Foulke did not choose any of those options, and instead elected to purchase UM coverage subject to the $15,000 mandatory minimum UM and UIM limits for standard policies prescribed by N.J.S.A. 17:28-1.1(a).

In response to Travieso's demand for UM coverage, Zurich offered him $15,000, the maximum UM coverage available to him under the policy. Travieso declined that offer, contending that N.J.S.A. 17:28-1.1(f) mandated that Zurich provide UM coverage equal to the policy's third-party liability limit of $1,000,000.

The parties' dispute gave rise to this coverage litigation.

B.

1.

Plaintiffs brought this action against Zurich, Crespo, Rivera, and Foulke.[1]  Plaintiffs alleged that Travieso was entitled to UM coverage up to the automobile liability policy's general limit of $1,000,000, not UM coverage up to the limit of $15,000 per person elected by Foulke.  Plaintiffs claimed that if the UM coverage available to Travieso were limited to $15,000 as Zurich contended, that coverage would violate N.J.S.A. 17:28-1.1(f) and public policy.  They asserted that the policy issued by Zurich should be reformed to provide up to $1,000,000 in UM coverage, and they sought damages and other relief under N.J.S.A. 17:28-1.1(f).

Plaintiffs also asserted claims against Zurich based on the Unfair Claims Settlement Practices Act (UCSPA), N.J.S.A. 17:29B-1 to -19; the New Jersey Insurance Fair Conduct Act (IFCA), N.J.S.A. 17:29BB-1 to -3; and the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -233.

Plaintiffs moved for summary judgment with respect to their claim for reformation of the policy under N.J.S.A. 17:28-1.1(f), as well as their claims under the UCSPA, the IFCA, and the CFA.  They argued that N.J.S.A. 17:28-

---

[1]  Crespo, Rivera, and Foulke are not parties to this appeal, and we do not address the claims that plaintiffs asserted against them.

7

1.1(f) mandates UM coverage for a named insured's employee up to a limit equal to the third-party liability policy limit of $1,000,000. Zurich cross-moved for partial summary judgment, seeking dismissal of all of plaintiffs' claims except their claim for UM benefits up to the $15,000 UM coverage limit set forth in the policy. Citing the unpublished decision of the United States District Court in Chiaccheri, which rejected an interpretation of N.J.S.A. 17:28-1.1(f) analogous to Travieso's construction of the statute in this matter, Zurich argued that Travieso was entitled to no more than $15,000 in UM coverage in accordance with the policy's terms.

The trial court found Chiaccheri to be distinguishable "in that it applies to UIM" coverage, not UM coverage. Zurich advised the trial court that there was no dispute that the named insured and its employees were entitled to the same level of UM coverage: $15,000. The court maintained, however, that "the business has a policy of a million dollars" in UM coverage for itself, but only $15,000 in UM coverage for its employees, and that Zurich's position was "an attempt to circumvent the statute." The court ruled that "the maximum coverage available" for Travieso's UM claim "should be a million dollars," and ordered that the policy be reformed "to state that fact."

The trial court granted in part and denied in part Travieso's motion for summary judgment and denied Zurich's cross-motion for partial summary

8

judgment.[2]  It reformed the Zurich policy to provide $1,000,000 in UM coverage to Travieso.

Zurich moved for reconsideration.  It argued that the trial court's understanding that the policy provided $1,000,000 in UM and UIM coverage to Travieso's employer, Foulke, was incorrect, and stated that the policy instead provided the employer and its employees the same level of UM coverage -- the $15,000 mandatory minimum that N.J.S.A. 17:28-1.1(a) required.  Zurich contended that the policy therefore complied with N.J.S.A. 17:28-1.1(f).

The trial court declined to reconsider its interpretation of the policy's terms or its prior ruling.

### 2.

Zurich moved for leave to appeal the trial court's determination of the parties' cross-motions for summary judgment and the motion for reconsideration.  The Appellate Division denied leave to appeal.

### 3.

Zurich moved before this Court for leave to appeal the trial court's judgment.  It challenged the trial court's reformation of the policy, noting that

---

[2]  The trial court denied Travieso's motion for summary judgment as to his claims under the UCSPA, the IFCA, and the CFA.  Those claims are not part of this appeal.

the trial court premised its ruling on a misunderstanding of the policy's UM coverage terms and a mistaken interpretation of N.J.S.A. 17:28-1.1(f). It also argued that plaintiffs' claims under the UCSPA, the IFCA, and the CFA fail as a matter of law and should be dismissed.

We granted in part Zurich's motion for leave to appeal, limited to its arguments regarding the interpretation of N.J.S.A. 17:28-1.1(f), and denied its motion for leave to appeal with respect to Travieso's UCSPA, IFCA, and CFA claims. 262 N.J. at 61. We also granted amicus curiae status to the New Jersey Defense Association (NJDA) and the New Jersey Association for Justice (NJAJ).

## II.

Zurich argues that the trial court's ruling, premised on a misreading of the policy terms, contravenes N.J.S.A. 17:28-1.1(f)'s plain language and legislative intent. It asserts that N.J.S.A. 17:28-1.1(f) prohibits "step-down" provisions in commercial automobile liability policies that would provide employees with less UM coverage than their employers, but that the statute does not require that such policies provide first-party UM coverage that matches the third-party liability limit.

Plaintiffs contend that the first sentence of N.J.S.A. 17:28-1.1(f) bars the use of step-down provisions that provide employees lower UM coverage than

10

the coverage provided to the named insured. Relying on James v. New Jersey Manufacturers Insurance Co., 216 N.J. 552, 561-75 (2014), plaintiffs construe the statute's second sentence to entitle Travieso to receive the maximum amount of UM coverage that is "available by operation of law." They contend that such UM coverage must match the policy's general liability limits.

Citing N.J.S.A. 17:28-1.1(f)'s plain language and legislative history, the NJDA asserts that the statutory phrase "maximum uninsured or underinsured coverage available under the policy" denotes the policy's stated UM/UIM limits, not its general liability limits.

The NJAJ urges that we construe N.J.S.A. 17:28-1.1(f) to mandate that employers provide employees with the maximum UM coverage that the law allows, not the level of UM coverage the employer elects in the policy, which may leave employees with inadequate coverage.

### III.

### A.

We review "a trial court's grant or denial of summary judgment de novo, applying the same standard that governs the trial court's determination." Mist Pharms., LLC v. Berkley Ins. Co., 263 N.J. 554, 577 (2026). Here, the trial court's judgment was based on statutory construction and the interpretation of an insurance policy, both of which are also subject to de novo review. See

11

Kocanowski v. Township of Bridgewater, 237 N.J. 3, 9 (2019) (interpretation of a statute); AC Ocean Walk, LLC v. Am. Guar. & Liab. Ins. Co., 256 N.J. 294, 312 (2024) (construction of an insurance policy, which "is a legal determination, not a factual inquiry").

B.

We first address the trial court's interpretation of the policy terms.

As the Zurich policy makes clear, the UM coverage provided to Foulke as the named insured and the UM coverage provided to employees such as Travieso were subject to the same $15,000 limit for an injury to or the death of one person, consistent with the limits then in effect under N.J.S.A. 17:28-1.1(a). Foulke was offered options that would have provided for higher UM coverage. It was not required by law to choose any of those options, however, and it did not do so.

Nothing in the record suggests that Foulke purchased $1,000,000 in UM/UIM coverage for itself as the named insured, as the trial court concluded it did. The trial court's reference to coverage up to a $1,000,000 limit appears to be based on the general liability limit of $1,000,000 per accident, not a provision regarding UM or UIM coverage. A general liability limit -- a limit on coverage for covered third-party claims -- is clearly distinct from a limit that applies to UM coverage in a motor vehicle liability policy -- coverage for

12

injuries or property damage caused by third parties who lack insurance.

Contrary to the trial court's view, the Zurich policy did not provide to Foulke or any other named insured greater UM coverage than it provided to Travieso.

C.

1.

We next address the parties' dispute regarding the meaning of N.J.S.A. 17:28-1.1(f).  That statute provides that

> [n]otwithstanding the provisions of this section or any other law to the contrary, a motor vehicle liability policy or renewal of such policy of insurance, insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle, issued in this State to a corporate or business entity with respect to any motor vehicle registered or principally garaged in this State, shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy.  A policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage.
>
> [N.J.S.A. 17:28-1.1(f).]

13

In Chiaccheri, we addressed the same statutory interpretation issue raised by this appeal in the setting of a dispute about UIM coverage. See ___ N.J. at ___ (slip op. at 9-29). There, plaintiff Craig Chiaccheri, driving his employer's vehicle, was injured in a collision with a vehicle owned by an underinsured driver. Id. at ___ (slip op. at 4-5). The employer's policy provided $2,000,000 in general liability coverage but limited UIM coverage to the minimum UIM coverage mandated by N.J.S.A. 17:28-1.1(a), $15,000 per person and $30,000 per accident. Id. at ___ (slip op. at 4).

Chiaccheri argued that N.J.S.A. 17:28-1.1(f) requires that an automobile liability insurance policy issued to a corporate or business entity provide the entity's employees with UIM coverage up to the policy's general liability limits, and that a policy that fails to do so violates N.J.S.A. 17:28-1.1(f) and public policy. Id. at ___ (slip op. at 5). Zurich contended that N.J.S.A. 17:28-1.1(f) was enacted to bar step-down provisions that deprive employees of UM or UIM coverage that is available to the named insured, and that it does not require that such coverage equal a policy's general liability limits.

Reviewing a determination by the United States District Court for the District of New Jersey that the insurance policy in Chiaccheri did not violate N.J.S.A. 17:28-1.1(f) or contravene public policy, the Third Circuit filed a petition for certification, asking this Court to answer the following questions:

14

1. With respect to a "motor vehicle liability policy . . . that names a corporate or business entity as a named insured" under N.J.S.A. 17:28-1.1(f), what is the "maximum . . . underinsured motorist coverage available under the policy" that must be provided to "an individual employed by the corporate or business entity"?

2. Are endorsements limiting underinsured motorist coverage to an amount less than the general third-party liability coverage limit under the same policy in violation of N.J.S.A. 17:28-1.1(f) or otherwise contrary to public policy?

[Id. at ___ (slip op. at 6-7).]

In Chiaccheri, we reviewed the plain language and legislative history of N.J.S.A. 17:28-1.1(a), (b), and (f). Id. at ___ (slip op. at 12-17) (citing N.J.S.A. 17:28-1.1(a), (b), (f); Sponsors' Statement to A. 3981 (L. 1983, c. 362); A. Fin. Insts. & Ins. Comm. Statement to S. 1666 (May 10, 2007)). We concluded that N.J.S.A. 17:28-1.1(f), enacted in the wake of this Court's decision enforcing a step-down provision in Pinto v. New Jersey Manufacturers Insurance Co., 183 N.J. 405 (2005), was intended to bar step-down provisions in commercial automobile liability policies that purport to provide employees with less UIM coverage than the coverage afforded to the named insured -- not to require such policies to provide first-party UIM coverage subject to limits equal to the policies' third-party general liability limits. Id. at ___ (slip op. at 20-25).

15

In Chiaccheri, we found guidance regarding N.J.S.A. 17:28-1.1(f)'s legislative intent in our decision in James. Id. at ___ (slip op. at 16-18) (citing James, 216 N.J. at 556-57, 565-74). In the context of a retroactivity analysis, we held in James that the N.J.S.A. 17:28-1.1(f) first sentence "prohibits providing an employee with less coverage than the named insured on a corporate or business entity's commercial automobile liability policy." Id. at ___ (slip op. at 16-17) (citing James, 216 N.J. at 566). We viewed the provision's second sentence to direct "what should happen" if the corporate or business entity's commercial automobile liability policy has not identified a named insured other than the business entity itself. Id. at ___ (slip op. at 16-17) (citing James, 216 N.J. at 566). And we noted our holding in James that although "employees seeking coverage for accidents occurring after [N.J.S.A. 17:28-1.1(f)] took effect would be covered under reformed policies, as directed by law," coverage for "an accident to an employee occurring after" N.J.S.A. 17:28-1.1(f)'s effective date "would be treated differently by operation of law than would be an accident that preceded that law's effective date." Id. at ___ (slip op. at 17-18) (citing James, 216 N.J. at 569, 571-72).

In Chiaccheri, we found no indication in the plain language or legislative history of N.J.S.A. 17:28-1.1(f) that the Legislature's purpose in enacting the statute was to mandate that insurers offer and commercial insureds purchase

16

UIM coverage equal to the general liability limits of a given policy. Id. at ___ (slip op. at 21). As we noted, the Legislature could easily have prescribed such a requirement, but did not do so. Id. at ___ (slip op. at 21) (citing N.J.S.A. 17:28-1.1(f)).

We therefore answered the Third Circuit's first question by holding that "the maximum UIM coverage 'available under the policy' that must be provided to an individual employed by the corporate or business entity" is coverage up to the UIM coverage limit that the corporate or business entity selected under the policy for the named insured, not UIM coverage up to the general third-party liability coverage limit under the policy. Id. at ___ (slip op. at 19-26).

We answered the Third Circuit's second question by holding that an endorsement in a motor vehicle liability policy limiting UIM coverage to an amount less than the general third-party liability coverage limit under the same policy does not violate N.J.S.A. 17:28-1.1(f) or public policy, provided that (1) the UIM coverage available to the employee under the policy meets all applicable requirements of N.J.S.A. 17:28-1.1(a) and (b); and (2) under the endorsement, the UIM coverage available to the named insured and the UIM coverage available to employees are subject to the same limits in accordance with N.J.S.A. 17:28-1.1(f). Id. at ___ (slip op. at 26-29).

17

2.

N.J.S.A. 17:28-1.1(f) treats UM coverage and UIM coverage in precisely the same manner. See N.J.S.A. 17:28-1.1(f) (drawing no distinction between UM and UIM coverage for purposes of that provision). Our interpretation of N.J.S.A. 17:28-1.1(f) with respect to the UIM coverage at issue in Chiaccheri also applies in the UM setting of this appeal.

Accordingly, the maximum UM coverage "available under the policy" that must be provided to Travieso is coverage up to the UM coverage limit that Foulke selected under its policy for the named insured, not up to the general third-party liability limit under the policy issued by Zurich to Foulke. Here, the applicable UM coverage limit is $15,000, consistent with the policy's terms and in accord with N.J.S.A. 17:28-1.1(a)'s mandatory minimum in effect when the policy was issued. See Chiaccheri, ___ N.J. at ___ (slip op. at 25); N.J.S.A. 17:28-1.1(a).

It is clear that the UM coverage available to Travieso under the Zurich policy issued to Foulke met all applicable requirements of N.J.S.A. 17:28-1.1(a) and (b) and provided the same level of UM coverage to Travieso as it provided to the named insureds. Accordingly, the UM provisions of the Zurich policy do not violate either N.J.S.A. 17:28-1.1(f) or New Jersey's public policy. See Chiaccheri, ___ N.J. at ___ (slip op. at 19-29).

18

Travieso is therefore not entitled to summary judgment on his claim for reformation of the policy under N.J.S.A. 17:28-1.1(f), or his claim for damages based on that provision. Zurich is entitled to partial summary judgment dismissing those claims.

We reverse the trial court's determination. We remand this matter to the trial court for the entry of an order denying Travieso's motion for summary judgment and granting Zurich's motion for partial summary judgment with respect to plaintiffs' claims for reformation of the policy and for damages based on N.J.S.A. 17:28-1.1(f). On remand, the trial court should address plaintiffs' claims against Zurich based on the UCSPA, the IFCA, and the CFA, as well as any other issues that remain unresolved following this appeal.

## IV.

The judgment of the trial court is reversed, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.

**CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, FASCIALE, NORIEGA, and HOFFMAN join in JUSTICE PATTERSON's opinion.**

19